UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF OHIO
EASTERN DIVISION

| | |
|---|---|
| LUV LEE LANTZ,<br><br>                    Plaintiff,<br><br>vs.<br><br>COMMISSIONER OF SOCIAL SECURITY,<br><br>                    Defendant. | CASE NO. 1:25-CV-01126-CAB<br><br>JUDGE CHRISTOPHER A. BOYKO<br><br>MAGISTRATE JUDGE DARRELL A. CLAY<br><br>**REPORT AND RECOMMENDATION** |

### INTRODUCTION

Plaintiff Luv Lee Lantz challenges the Commissioner of Social Security's decision denying supplemental security income (SSI). (ECF #1). The District Court has jurisdiction under 42 U.S.C. §§ 1383(c) and 405(g). This matter was referred to me under Local Civil Rule 72.2 to prepare a Report and Recommendation. (Non-document entry dated June 2, 2025). For the reasons below, I recommend the District Court **AFFIRM** the Commissioner's decision.

### PROCEDURAL BACKGROUND

Ms. Lantz applied for SSI on October 31, 2022.[1] (Tr. 99). She alleged disability beginning October 31, 2022, due to bipolar I disorder, post-traumatic stress disorder (PTSD), generalized anxiety disorder, explosive personality disorder, and attention deficit hyperactivity disorder

---

[1]    Ms. Lantz also applied for disability insurance benefits. (*See* Tr. 194). That claim was denied on November 19, 2022 because Ms. Lantz had not worked long enough to qualify for disability insurance. (*See* Tr. 113). The record does not indicate whether she pursued the claim further. Her challenge here is limited to the denial of SSI. (*See* ECF #1).

1

(ADHD). (Tr. 96; *see also* Tr. 69 (amending onset date)). After the claims were denied initially and on reconsideration, Ms. Lantz requested a hearing before an administrative law judge. (Tr. 117, 123, 130). On December 13, 2023, Ms. Lantz (represented by counsel) and a vocational expert (VE) testified before the ALJ. (Tr. 64-91). On June 4, 2024, the ALJ determined Ms. Lantz was not disabled. (Tr. 10-21). On March 27, 2025, the Appeals Council denied Ms. Lantz's request for review, making the hearing decision the final decision of the Commissioner. (Tr. 1-3; *see also* 20 C.F.R. § 416.1481). Ms. Lantz timely filed this action on May 30, 2025. (ECF #1).

FACTUAL BACKGROUND

## I.       Personal and Vocational Evidence

Ms. Lantz was 41 years old on her claimed disability date and 44 years old at the hearing. (*See* Tr. 96). She has a high school diploma and has passed a state nursing-assistant exam. (Tr. 229). She has past relevant work experience as a waitress. (Tr. 71, 88).

## II.      Relevant Medical Evidence[2]

Prior to starting treatment in 2020, Ms. Lantz was diagnosed with bipolar disorder, ADHD, PTSD, and generalized anxiety disorder. (Tr. 294-95). Though she had been diagnosed with bipolar disorder, ADHD, and anxiety earlier in life, her PTSD arose after her daughter was murdered in February 2020. (*See* Tr. 286, 439).

Ms. Lantz received psychological treatment beginning before October 2020. (*See* Tr. 292). She was still working in 2020, though she reported getting upset on the job and had to call off

---

[2]       Ms. Lantz's arguments challenging the Commissioner's decision are primarily legal in nature, arguing the ALJ should have taken additional evidence to allow for a complete review by a state agency consultant. (*See* ECF #8 at PageID 494). Because this claim does not depend on an extensive discussion of the medical evidence, I limit my summary to the necessary background information.

2

work several times. (Tr. 229, 306, 313). She described her mood as "up and down all the time." (Tr. 306, 313). Sometimes her depression would leave her unable to get out of bed. (*See* Tr. 292).

Ms. Lantz attended counseling through her pastor. (*See* Tr. 398). She also attended four counseling sessions for her depression, anxiety, and mood instability. (Tr. 442, 438, 437, 436). Her coping mechanisms were "at least partially successful," though her irritability and anger continued despite taking her prescribed medications. (Tr. 436).

Ms. Lantz was prescribed medications to control her ADHD symptoms, which helped her focus, complete tasks, and not be impulsive. (Tr. 286). They would work for the morning, but wear off in the afternoon. (Tr. 292, 327). She was later prescribed another dose of medication for evening use. (Tr. 322). She was prescribed medication for her anxiety, which helped though her anxiety could still overwhelm her. (Tr. 299). Her anxiety medication would also make her feel "floaty." (Tr. 313). While it worked for some time, her anxiety medication lost effect. (*See* Tr. 419, 428). Her medications required repeated calibration to control her symptoms. (Tr. 294, 301, 315, 322, 328, 351, 359, 373, 398, 406, 414, 421, 428).

III.     Relevant Opinion Evidence

On February 5, 2023, state agency psychiatric consultant Carol Rosanova, M.D., reviewed Ms. Lantz's file and concluded there was insufficient evidence to give an opinion because Ms. Lantz had not provided documentation of her daily activities, a necessary component of the analysis. (Tr. 98-100). Dr. Rosanova did conclude the evidence on file "does strongly suggest that there has been improvement in [Ms. Lantz's] mental disorders" because "her bipolar disorder is now stable on state of the art meds," "[s]he has learned how to cope better," and "[s]he was also referred for trauma therapy." (Tr. 99). Dr. Rosanova speculated "[o]btaining further evidence would likely document that she would not be precluded from routine repetitive tasks." (*Id.*).

On June 21, 2023, state agency psychological consultant Nicole Sampson, Ph.D., reviewed Ms. Lantz's file on reconsideration and also concluded there was insufficient evidence to give an opinion. (Tr. 105-06). Dr. Sampson noted no allegations of a worsened condition, no additional medical records, and no documentation of Ms. Lantz's daily activities and the medical-source statements were brief, checkbox forms. (*See* Tr. 105).

**IV.     Relevant Testimonial Evidence**

Ms. Lantz explained she had worked as a waitress and bartender but she quit in February 2020 after her daughter was murdered. (Tr. 71-72). She tried to return to work, but was unable. (Tr. 72, 74). As she described, "You can't waitress and cry at the same time." (Tr. 72). When she is overwhelmed by stress and anxiety, she experiences a burning feeling in her chest like she is having a heart attack. (*See* Tr. 83).

In a typical day, Ms. Lantz wakes up from panic. (Tr. 75). Her emotion overpowers her in the morning and she cannot breathe and her head aches. (Tr. 75-76). She cries and feels like she is falling apart. (Tr. 76). Multiple times a day, she hears a "chatter," like white noise or static from a television. (*Id.*). She can calm herself by getting into the shower, pointing the showerhead at the curtain, and listening to the water hit the vinyl. (*See id.*). She has no social life. (*Id.*). She lives near close family friends who sometimes visit her in her house. (Tr. 77).

In a typical day, Ms. Lantz will vacuum her floors, clean what few dirty dishes she has, and keep up her house. (Tr. 79). She does not leave the house to shop for groceries, instead using DoorDash to have things delivered to her. (Tr. 77). She last left her house about eight months before the hearing to get an over-the-counter blood-pressure medication. (Tr. 77-78). A family friend drove her because she does not drive. (Tr. 78). She was very nervous in the store and

4

struggled to breathe. (*Id.*). She heard a humming noise from the lights that made her feel uncomfortable, out of place, and angry. (*Id.*). She struggled to speak with the cashier, so her friend spoke for her. (*Id.*).

Ms. Lantz used to be crafty, but has lost her concentration. (*See* Tr. 80). Her focus would move from one task to another "like a revolving door." (*Id.*). She has dealt with attention issues since she was a teenager but was not diagnosed with ADHD until later in life. (*Id.*).

Ms. Lantz had been on three different bipolar medications and while they did improve her functioning, they would stop working after a while. (Tr. 82). When she was medicated, she could do daily chores like cooking, cleaning, and laundry more easily. (*Id.*). She is not currently prescribed medications because she cannot secure transportation to her doctor for prescriptions. (Tr. 80). She has tried nine different mental-health providers within a 90-mile radius, but none have a doctor available. (Tr. 84). She has seen primary-care providers and therapists, but she often cannot see a specialist and "hit[s] a brick wall." (*See id.*). She would feel so anxious and scared when visiting a doctor, she would often end up feeling worse. (Tr. 85). She does not see a counselor but instead sometimes calls a crisis hotline, partly out of a worry providers might overreact. (Tr. 86). She has tried online and telemedicine providers, but they were unable to treat her bipolar disorder or dispense antidepressants or other controlled substances. (*See* Tr. 86-87).

## STANDARD FOR DISABILITY

Eligibility for benefits turns on the existence of a disability. 42 U.S.C. § 423(a). "Disability" is defined as the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or

which has lasted or can be expected to last for a continuous period of not less than 12 months." *Id.* § 1382c(a)(3)(A); *see also* 20 C.F.R. § 416.905(a).

The Commissioner follows a five-step evaluation process—found at 20 C.F.R. § 416.920—to determine whether a claimant is disabled:

1.     Was claimant engaged in a substantial gainful activity?

2.     Did claimant have a medically determinable impairment, or a combination of impairments, which is "severe," defined as one which substantially limits an individual's ability to perform basic work activities?

3.     Does the severe impairment meet one of the listed impairments?

4.     What is claimant's residual functional capacity and can claimant perform past relevant work?

5.     Can claimant do any other work considering his or her residual functional capacity, age, education, and work experience?

Under this five-step sequential analysis, the claimant has the burden of proof in Steps One through Four. *Walters v. Comm'r of Soc. Sec.*, 127 F.3d 525, 529 (6th Cir. 1997). The burden shifts to the Commissioner at Step Five to prove whether the claimant has the residual functional capacity (RFC) to perform available work in the national economy. *Id.* The ALJ considers the claimant's RFC, age, education, and past work experience to determine whether the claimant could perform other work. *Id.* Only if a claimant satisfies each element of the analysis, including inability to do other work, and meets the duration requirements, is the claimant deemed disabled. 20 C.F.R. § 416.920(b)-(f); *see also Walters*, 127 F.3d at 529.

### THE ALJ'S DECISION

At Step One, the ALJ determined Ms. Lantz had not engaged in substantial gainful activity since October 31, 2022—her claimed disability date. (Tr. 13). At Step Two, the ALJ identified bipolar disorder, generalized anxiety disorder, ADHD, and PTSD as severe impairments. (*Id.*). At

6

Step Three, the ALJ found Ms. Lantz's impairments did not meet or medically equal the requirements of a listed impairment. (Tr. 13-14).

At Step Four, the ALJ determined Mr. Lantz's RFC as follows:

> After careful consideration of the entire record, the undersigned finds that the claimant has the residual functional capacity to perform a full range of work at all exertional levels but with the following non-exertional limitations: she can understand and remember simple instructions consistent with unskilled work. She can maintain concentration, persistence and pace sufficient to carry out simple tasks for two-hour intervals over an 8-hour day with customary scheduled breaks. She can work in a low-stress job, defined as one requiring only occasional work-related decisions and only occasional changes in the work setting. She can occasionally interact with supervisors, co-workers and the public.

(Tr. 14-15) (cleaned up). Then the ALJ concluded Ms. Lantz could not perform her past relevant work. (Tr. 19). At Step Five, the ALJ determined Ms. Lantz could perform other work in the national economy, including as a laundry worker, housekeeper, and hand packager. (*See* Tr. 19-20). Thus, the ALJ concluded Ms. Lantz was not disabled. (Tr. 20).

### STANDARD OF REVIEW

In reviewing the denial of Social Security benefits, the court "must affirm the Commissioner's conclusions absent a determination that the Commissioner has failed to apply the correct legal standards or has made findings of fact unsupported by substantial evidence in the record." *Walters*, 127 F.3d at 528. The Commissioner's findings "as to any fact if supported by substantial evidence shall be conclusive." *McClanahan v. Comm'r of Soc. Sec.*, 474 F.3d 830, 833 (6th Cir. 2006) (citing 42 U.S.C. § 405(g)). "Substantial evidence" is "more than a scintilla of evidence but less than a preponderance and is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Besaw v. Sec'y of Health & Hum. Servs.*, 966 F.2d 1028, 1030 (6th Cir. 1992). But "a substantiality of evidence evaluation does not permit a selective reading of the record. Substantiality of evidence must be based upon the record taken as a whole.

7

Substantial evidence is not simply some evidence, or even a great deal of evidence. Rather, the substantiality of evidence must take into account whatever in the record fairly detracts from its weight." *Brooks v. Comm'r of Soc. Sec.*, 531 F.App'x 636, 641 (6th Cir. 2013) (cleaned up).

In determining whether substantial evidence supports the Commissioner's findings, the court does not review the evidence de novo, make credibility determinations, or weigh the evidence. *Brainard v. Sec'y of Health & Hum. Servs.*, 889 F.2d 679, 681 (6th Cir. 1989). Even if substantial evidence (or indeed a preponderance of the evidence) supports a claimant's position, the court cannot overturn "so long as substantial evidence also supports the conclusion reached by the ALJ." *Jones v. Comm'r of Soc. Sec.*, 336 F.3d 469, 477 (6th Cir. 2003). This is because there is a "zone of choice" within which the Commissioner can act, without fear of court interference. *Mullen v. Bowen*, 800 F.2d 535, 545 (6th Cir. 1986).

Apart from considering whether substantial evidence supports the Commissioner's decision, the court must determine whether proper legal standards were applied. The failure to apply correct legal standards is grounds for reversal. *Walters,* 127 F.3d at 528. Even if substantial evidence supports the ALJ's decision, the court must overturn when an agency does not follow its own regulations and thereby prejudices or deprives the claimant of substantial rights. *Wilson v. Comm'r of Soc. Sec.*, 378 F.3d 541, 546-47 (6th Cir. 2004).

Finally, a district court cannot uphold an ALJ's decision, even if there "is enough evidence in the record to support the decision, [where] the reasons given by the trier of fact do not build an accurate and logical bridge between the evidence and the result." *Fleischer v. Astrue*, 774 F.Supp.2d 875, 877 (N.D. Ohio 2011) (internal quotations omitted); *accord Shrader v. Astrue*, No. 11-13000,

2012 WL 5383120, at *6 (E.D. Mich. Nov. 1, 2012) ("If relevant evidence is not mentioned, the Court cannot determine if it was discounted or merely overlooked.").

### DISCUSSION

Ms. Lantz argues the ALJ erred by taking on the role of a medical consultant and crafting an RFC without the benefit of a state agency medical opinion. (ECF #8 at PageID 494). She relies on *Deskin v. Comm'r of Soc. Sec.*, 605 F.Supp.2d 908 (N.D. Ohio 2008), and other similar cases from the First Circuit. (*See* ECF #8 at PageID 494-95). The *Deskin* rule states:

> . . . [when] the transcript contains only diagnostic evidence and no opinion from a medical source about functional limitations (or only an outdated non-examining agency opinion), to fulfill the responsibility to develop a complete record, the ALJ must recontact the treating source, order a consultative examination, or have a medical expert testify at the hearing. This responsibility can be satisfied without such opinion only in a limited number of cases [in which] the medical evidence shows relatively little physical impairment and an ALJ can render a commonsense judgment about functional capacity.

605 F.Supp.2d at 912 (cleaned up).

The *Deskin* Court later clarified the rule applied in just two circumstances: (1) when an ALJ made an RFC determination based on no medical-source opinion; or (2) when an ALJ made an RFC based on an "outdated" medical-source opinion "that does not include consideration of a critical body of objective medical evidence." *Kizys v. Comm'r of Soc. Sec.*, No. 3:10-cv-25, 2011 WL 5024866, at *2 (N.D. Ohio Oct. 21, 2011). Ms. Lantz does not cite *Kizys*, but it is apparent from her argument her case fits the first scenario, as she argues "there is no question that the ALJ abused her discretion by crafting an RFC solely based on her own interpretation of the available evidence" and "ALJ Parker's RFC is not supported by substantial evidence because it was determined without the assessment of a medical advisor." (*See* ECF #8 at PageID 495-96).

9

To start, Ms. Lantz's reliance on *Deskin* is dubious. The Sixth Circuit has not addressed *Deskin*, despite Ms. Lantz misidentifying *Deskin* as a case where "the Sixth Circuit dealt with a similar matter." (*See* ECF #8 at PageID 494) (citing *Deskin*, 605 F.Supp.2d at 912). The decision has received considerable negative treatment from other district courts in this district. *See, e.g.,* *Henderson v. Comm'r of Soc. Sec.*, No. 1:08-cv-2080, 2010 WL 750222, at *2 (N.D. Ohio Mar. 2, 2010); *Winans v. Comm'r of Soc. Sec.*, No. 5:22-cv-1793, 2023 WL 7622634, at *4 (N.D. Ohio Nov. 15, 2023) ("*Deskin* is a non-binding district court decision that conflicts with the regulations and Sixth Circuit case law."); *Kopis v. Kijakazi*, No. 1:22-cv-2212, 2024 WL 1131058, at *2 (N.D. Ohio Mar. 15, 2024) ("[A]n ALJ's finding that runs afoul of the *Deskin* decision's rationale is not a basis for remand."). Thus, the Court could reject Ms. Lantz's argument to the extent it is based on *Deskin* and its progeny.

Equally important, however, the Sixth Circuit has rejected the logic underpinning Ms. Lantz's argument that remand is warranted because "ALJ Parker's RFC is not supported by substantial evidence because it was determined without the assessment of a medical advisor." (*See* ECF #8 at PageID 495-96). To Ms. Lantz, the ALJ must base an RFC on a medical-source opinion and cannot do so on her own. In *Mokbel-Aljahmi v. Comm'r of Soc. Sec.*, 732 F.App'x 395, 401 (6th Cir. 2018), the Sixth Circuit, in an unpublished decision, rejected the argument "that once the ALJ decided to give no weight to the physicians' opinions regarding his ability to work, the ALJ was required to get the opinion of another physician before setting the residual functional capacity." *Id.* The Court did not address *Deskin* directly, but instead applied its cases holding an ALJ does not have to base the RFC on a medical-source opinion. *See id.* (citing *Shepard v. Comm'r of Soc. Sec.*, 705 F.App'x 435, 442-43 (6th Cir. 2017) (rejecting the argument that "the ALJ's [residual

10

functional capacity] lacks substantial evidence because no physician opined that [the claimant] was capable of light work")); *see also Tucker v. Comm'r of Soc. Sec.*, 775 F.App'x 220, 226 (6th Cir. 2019) (holding there is "[n]o bright-line rule" stating that "medical opinions must be the building blocks of the" RFC). Because Ms. Lantz would require the ALJ to use a medical opinion to craft an RFC, the argument runs afoul of these cases. This body of controlling Sixth Circuit case law also renders Ms. Lantz's reliance on other authority from the First Circuit unpersuasive. (*See* ECF #8 at PageID 494-95) (citing *Rohrberg v. Apfel*, 26 F.Supp.2d 303 (D. Mass. 1998) and *Rosado v. Sec'y of Health & Hum. Servs.*, 807 F.2d 292, 294 (1st Cir. 1986)).[3] Thus, the Court could also reject Ms. Lantz's argument because it would require the ALJ base the RFC on a medical opinion.

Even if the Court accepted *Deskin* for its persuasive value, remand here would not be appropriate. *Deskin* and *Kizys* acknowledge that "an ALJ may make a residual functional capacity finding without a physician's assessment 'where the medical evidence shows relatively little physical impairment' and an ALJ 'can render a commonsense judgment about functional capacity.'" *Kizys*, 2011 WL 5024866, at *3 (quoting *Deskin*, 605 F.Supp.2d at 912). Additionally, this is a case in the first circumstance of *Deskin*, where no medical opinion issued. (*See* Tr. 19) ("With no functional assessment of the claimant's limitations, there are no opinions to evaluate for persuasiveness."). In such cases, the natural question is how "the ALJ could make a detailed RFC finding when the

---

[3]        *Rosado* may not apply even if this case were in the First Circuit. The First Circuit later held in an unpublished table decision that "*Rosado* is distinguishable in that in *Rosado* there was no evidence from a *vocational expert* as to the range of the work the claimant could perform." *Gentle v. Shalala*, 21 F.3d 419, 1994 WL 102199, at *2 n.1 (1st Cir. 1994) (table) (emphasis added). Here, there was testimony from a VE that a hypothetical person with Ms. Lantz's age, education, experience, and RFC could work as a laundry worker, industrial cleaner, housekeeper, and hand packager. (*See* Tr. 89-90). The ALJ relied on that evidence in finding Ms. Lantz was not disabled because she could perform other jobs that exist in significant numbers in the national economy. (Tr. 19-20).

reviewing State agency physicians could not." *Epps v. Comm'r of Soc. Sec.*, No. 1:23-cv-1462, 2024 WL 3184466, at *9 (N.D. Ohio June 4, 2024), *report and recommendation adopted*, 2024 WL 3179664 (N.D. Ohio June 26, 2024); *see also Falkosky v. Comm'r of Soc. Sec.*, No. 1:19-cv-2632, 2020 WL 5423967, at *7 (N.D. Ohio Sept. 10, 2020).

Here, the state agency reviewers concluded they could not issue an opinion because Ms. Lantz had not submitted documentation of her daily activities. (Tr. 99, 105). Unlike the state agency reviewers, the ALJ had the benefit of Ms. Lantz's testimony about her activities. (Tr. 75-79, 82). The ALJ also had counseling records describing Ms. Lantz visiting family and routinely attending a church group. (*See* Tr. 13-14, 18) (citing Tr. 357, 364, 384, 398, 405, 412). Ms. Lantz makes multiple assertions to the contrary. (*See, e.g.*, ECF #8 at PageID 494 ("Rather than obtaining further evidence as suggested by Dr. Rosanova . . . the ALJ crafted her own RFC."), 495 ("[T]he ALJ ignored the suggestion to obtain further evidence and chose to craft an RFC for Ms. Lantz")). But the record shows the ALJ had the missing piece "demonstrating [a claimant]'s functional abilities" that the state agency reviewers lacked, so the ALJ could properly forego a medical opinion under *Deskin*. *See Falkosky*, 2020 WL 5423967, at *8. Evidence about Ms. Lantz's daily activities is far from the "extensive MRI findings of diffuse and substantial degenerative disc disease throughout Deskin's spine" that required interpretation by a radiologist or trained medical source. *See Deskin*, 605 F.Supp.2d at 913; *see also Bird v. Comm'r of Soc. Sec.*, No. 1:20-cv-11919, 2021 WL 8014027, at *4 (E.D. Mich. Nov. 30, 2021) (finding mental-status examinations noting an anxious or depressed mood with normal affect, thought process, thought content and good memory, attention, and judgment "are not overly complex such that a lay person could not make a

12

commonsense judgment about functional capacity" without a medical-source opinion), *report and recommendation adopted*, 2022 WL 851718 (E.D. Mich. Mar. 22, 2022).

Here, Dr. Rosanova speculated that even if she had evidence of Ms. Lantz's daily activities, likely little would change: "[T]he evidence currently on file does strongly suggest that there has been improvement in her mental disorders . . . Obtaining further evidence would likely document that she would not be precluded from routine repetitive tasks." (Tr. 99). Thus, the ALJ could make a commonsense interpretation acceptable under the *Deskin* rule because the ALJ had the missing information the state agency reviewers lacked, and that information was not raw medical information that required trained interpretation to understand.

Ms. Lantz also argues the ALJ's decision did not follow Social Security regulations. She cites only one regulation in her brief: "CFR § 404.1513a(b)(1)." (ECF #8 at PageID 494). To the extent she relies on this incomplete citation as an independent argument for remand, such reliance is misplaced. First, 20 C.F.R. § 404.1513a applies to disability insurance benefits under Title II of the Social Security Act and not to Ms. Lantz's application for SSI under Title XVI. *See* 20 C.F.R. § 404.1. Second, she quotes the section to argue state agency reviewers are "highly qualified and expert in Social Security disability evaluation." (ECF #8 at PageID 494). Yet any argument that an ALJ may not issue a decision without adopting a reviewer's opinion is undercut by the other phrase in the quoted section that "Administrative law judges are not required to adopt any prior administrative medical findings." 20 C.F.R. § 404.1513a(b)(1). The same language appears in the companion provision for SSI. *See* 20 C.F.R. § 416.913a(b)(1).

I thus decline to recommend remand.

CONCLUSION AND RECOMMENDATION

Following review of the arguments presented, the record, and the applicable law, I recommend the District Court **AFFIRM** the Commissioner's decision denying SSI.

Dated: April 14, 2026

DARRELL A. CLAY
UNITED STATES MAGISTRATE JUDGE

OBJECTIONS, REVIEW, AND APPEAL

Within 14 days after being served with a copy of this Report and Recommendation, a party may serve and file specific written objections to the proposed findings and recommendations of the Magistrate Judge. *See* Fed. R. Civ. P. 72(b)(2); *see also* 28 U.S.C. § 636(b)(1); Local Civ. R. 72.3(b). Properly asserted objections shall be reviewed de novo by the assigned district judge.

Failure to file objections within the specified time may result in the forfeiture or waiver of the right to raise the issue on appeal, either to the district judge or in a subsequent appeal to the United States Court of Appeals, depending on how or whether the party responds to the Report and Recommendation. *Berkshire v. Dahl*, 928 F.3d 520, 530 (6th Cir. 2019). Objections must be specific and not merely indicate a general objection to the entirety of the Report and Recommendation; "a general objection has the same effect as would a failure to object." *Howard v. Sec'y of Health & Hum. Servs.*, 932 F.2d 505, 509 (6th Cir. 1991). Objections should focus on specific concerns and not merely restate the arguments in briefs submitted to the Magistrate Judge. "A reexamination of the exact same argument that was presented to the Magistrate Judge without specific objections 'wastes judicial resources rather than saving them and runs contrary to the purpose of the Magistrates Act.'" *Overholt v. Green*, No. 1:17-cv-186, 2018 WL 3018175, at *2 (W.D. Ky. June 15, 2018) (quoting *Howard*, 932 F.2d at 509). The failure to assert specific objections may in rare cases be excused in the interest of justice. *See United States v. Wandahsega*, 924 F.3d 868, 878-79 (6th Cir. 2019).

14