**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF OHIO**
**EASTERN DIVISION**

| | | |
|---|---|---|
| LUV LEE LANTZ, | ) | CASE NO. 1:25-CV-1126 |
| | ) | |
| Plaintiff, | ) | JUDGE CHRISTOPHER A. |
| | ) | BOYKO |
| | ) | |
| vs. | ) | |
| | ) | |
| COMMISSIONER OF | ) | OPINION AND ORDER |
| SOCIAL SECURITY, | ) | |
| | ) | |
| Defendant. | ) | |

**CHRISTOPHER A. BOYKO, J.**:

This matter comes before the Court on Plaintiff's Objections (ECF #12) to the Magistrate

Judge's Report and Recommendation (ECF #16) recommending the Court affirm the

Commissioner's decision to deny Plaintiff's claim for Supplemental Security Income ("SSI").

For the following reasons, the Court ADOPTS the Report and Recommendation and AFFIRMS

the Commissioner's decision.

**Background Facts**

The following is a procedural synopsis of Plaintiff's claim.  For a complete overview of

Plaintiff's medical history, a detailed discussion of the facts and an assessment of all documents

in relation to Plaintiff's claims, see the Magistrate Judge's Report and Recommendation.

Plaintiff filed this action on May 30, 2025, challenging the Commissioner of Social

Security's decision to deny her SSI. (ECF #1).  Plaintiff originally applied for SSI on

October 31, 2022, for her disability claim including bipolar I disorder, post-traumatic stress

disorder (PTSD), generalized anxiety disorder, explosive personality disorder and attention

deficit hyperactivity disorder (ADHD).  The Commissioner denied her claims initially and on reconsideration.  Plaintiff next requested a hearing before an administrative law judge ("ALJ").  On December 13, 2023, Plaintiff, represented by counsel and a vocational expert ("VE") testified before the ALJ.  The ALJ determined that Plaintiff was not disabled on June 4, 2024.  On March 27, 2025, Plaintiff's request to the Appeals Council for review was denied, rendering the ALJ's decision final.

The Magistrate Judge, in his Report & Recommendation, recommends the Court affirm the denial of Plaintiff's SSI.  In support, he reviewed the ALJ's application of Plaintiff's case to the five steps under C.F.R. § 416.920 to determine whether Plaintiff is disabled.

At Step One, the ALJ determined that Plaintiff's work after October 31, 2022, did not constitute substantial gainful activity.

At Step Two, the ALJ found Plaintiff to have severe impairments.  All alleged impairments were included, except for explosive personality disorder.

At Step Three, the ALJ found Plaintiff did not have an impairment or combination of impairments to meet or equal the severity of a listed impairment.

At Step Four, the ALJ determined Plaintiff's residual functional capacity ("RFC") to be able to:

> perform a full range of work at all exertional levels but with the following nonexertional limitations: she can understand and remember simple instructions consistent with unskilled work. She can maintain concentration, persistence and pace sufficient to carry out simple tasks for two hour intervals over an 8-hour day with customary scheduled breaks.  She can work in a low stress job, defined as one requiring only occasional work-related decisions and only occasional changes in the work setting. She can occasionally interact with supervisors, coworkers and the public.

Next, the ALJ determined Plaintiff could not perform any past relevant work.

2

Finally, at Step Five, the ALJ found Plaintiff could perform other work in the economy, including a laundry worker, a housekeeper and a hand packager.  Thus, the ALJ concluded Plaintiff was not disabled.

Plaintiff alleges that the ALJ erred in Step Three and Four by taking the role of a medical consultant when determining Plaintiff's RFC instead of utilizing the opinions of state agency medical consultants.  (ECF #8, at 11).  She argues that because the state agency psychological consultant found that Plaintiff's ADHD, depression and anxiety were severe, and required documentation of Plaintiff's daily activities, the consultant could not complete her assessment of Plaintiff's RFC.  (ECF #8, at 11).   Plaintiff suggests that the ALJ erred in failing to obtain further evidence as suggested by the consultant. (ECF #8, at 12).   Plaintiff insists the ALJ instead "crafted her own RFC based on her interpretation of the record" and therefore "failed to comply with legal precedent and SSA regulations."  *Id.*

Further, Plaintiff argues the ALJ erred in deciding Plaintiff's RFC based on "mere diagnosed exertional impairments."  Plaintiff insists that the record only contained "diagnoses, medications, and treatment notes," and did not contain a discussion of residual functional capacities.  (ECF #8, at 12).   Plaintiff reasons that this lack of discussion in the record did not permit the ALJ to interpret the medical evidence "as she saw fit," and determined that the ALJ's evaluation of the RFC without a medical discussion was improper.  *Id.*

Plaintiff argues the ALJ erred and the decision should be reversed for failing to pursue more evidence as suggested by the state medical consultant and determining the RFC based on her own interpretation of the limited record.

The Commissioner responds by disputing Plaintiff's assertion that legal precedent requires the ALJ to base their decisions on a medical opinion.  (ECF #10, at 6).  The

3

Commissioner argues that, on the contrary, Sixth Circuit precedent holds that the "ALJ alone has the responsibility to determine a claimant's RFC." (ECF #10, at 7). Thus, the ALJ can give no weight to a medical opinion in the record and still make a decision supported by substantial evidence in the record. *Id*.

Further, the Commissioner responds by emphasizing the rejection of the legal precedent cited by Plaintiff within the Northern District of Ohio. (ECF #10, at 8). The Commissioner finds that the precedent cited by Plaintiff is "non-binding" and conflicts with Sixth Circuit precedent that holds an ALJ can make a determination based upon substantial evidence, even if contrary to a medical opinion. *Id*.

Next, the Commissioner argues that, regardless of the consultants' suggestion to obtain more evidence, the ALJ used "ample evidence" from the record to determine Plaintiff's RFC. *Id*. First, the Commissioner emphasizes that the ALJ considered both the evidence supporting a disability and denying a disability. (ECF #10, at 8–9). Second, he argues that the ALJ noted Plaintiff's statements about her daily activities based upon the record and her testimony, which often differed. *Id*. at 9. Finally, the Commissioner argues the ALJ recognized Plaintiff's reports contained "improvement with medication or treatment," and "evidence of a lack of treatment at times." *Id*. Ultimately, the Commissioner submits that the ALJ acted reasonably with substantial evidence and the decision should therefore be upheld. *Id*. at 9–10.

In sum, the Commissioner argues that the ALJ was not required to rely on a medical opinion in her finding and used substantial evidence to support her decision. (ECF #10, at 10). Therefore, Plaintiff failed to show the ALJ determined Plaintiff's RFC incorrectly. *Id*.

The Magistrate Judge dismissed the legal principle cited by Plaintiff because it is not Sixth Circuit precedent, has been logically rejected by the Sixth Circuit, and the Sixth Circuit has held that an ALJ is not required to base their decisions on a medical opinion.  *See id.*

Finally, the Magistrate Judge concluded that, even if the legal principle relied upon by Plaintiff were precedent, Plaintiff still had no case for remand.   Here, the Magistrate Judge finds that the ALJ had sufficient evidence to know the daily activities of Plaintiff and therefore could make a decision on Plaintiff's RFC that the state medical consultants could not.  (ECF #11, at 11).  Plaintiff's argument, that a medical assessment must be relied upon in an ALJ's decision, allows an applicable exception when the "medical evidence shows relatively little physical impairment and an ALJ can render a commonsense judgment about functional capacity."  *Id*.   In this case, the Magistrate Judge concluded that the ALJ made a commonsense judgment on Plaintiff's RFC.  (ECF #11, at 12–13).

The Magistrate Judge found that the record provided sufficient evidence of Plaintiff's daily activities to fill the gap in the state agency consultant's knowledge and her mental health problems were not complex enough to be categorized as evidence requiring an additional medical interpretation beyond a "commonsense interpretation."  *See* (ECF #11, at 13).  Further, the Magistrate Judge emphasized the state agency consultant's statement that further evidence of her daily activities would show "she would not be precluded from routine repetitive tasks."  *Id.* (quoting Tr. 99).  Therefore, the Magistrate Judge concluded the ALJ could make a commonsense interpretation under Plaintiff's legal authority because the ALJ had evidence of Plaintiff's daily activities that was not available to the state medical consultants and could evaluate it without the assistance of a medical professional.  (ECF #11, at 13).

Finally, the Magistrate Judge concluded that Plaintiff had no basis to argue that the ALJ's decision did not comply with Social Security regulations.  (ECF #11, at 13).   The Magistrate Judge highlighted that the statute Plaintiff cites in her brief does not apply to Plaintiff's application for SSI under Title XVI.  *Id.*   Further, examining Plaintiff's use of the statute to emphasize the importance of the high qualifications of a state agency consultant, the Magistrate Judge countered this argument with a nearby section of the statute that states ALJ's are "not required to adopt any prior administrative medical findings."  (ECF #11, at 13).  The same language is also highlighted under the statute that correctly applies to Plaintiff's application for SSI.  *Id.*   Therefore, the Magistrate Judge concluded that Plaintiff's argument that the ALJ did not comply with Social Security regulations is erroneous.  *See* (ECF #11, at 13).

Ultimately, the Magistrate Judge declined to recommend remand.

**ANALYSIS**

**<u>Standard of Review</u>**

Review of a magistrate judge's report and recommendation is governed by 28 U.S.C.§ 636(b), which requires a de novo decision as to those portions of the report and recommendation to which objection is made.  "An 'objection' that does nothing more than state a disagreement with a magistrate's suggested resolution, or simply summarizes what has been presented before, is not an 'objection' as that term is used in this context."  *Aldrich v. Bock*, 327 F. Supp. 2d 743, 747 (E.D. Mich. 2004); *see also* Fed. R. Civ. P. 72(b)(3) ("[t]he district judge must determine de novo any part of the magistrate judge's disposition that has been properly objected to[]");  Local Rule 72.3(b) (any objecting party shall file "written objections which shall specifically identify the portions of the proposed findings, recommendations, or report to which  objection is made and the basis for such objections[]").

Judicial review is limited to a determination of whether the ALJ applied the correct legal standards and whether there is "substantial evidence" in the record as a whole to support the decision. 42 U.S.C. § 405(g); *Kyle v. Comm'r of Soc. Sec.*, 609 F.3d 847, 854-55 (6th Cir. 2010). "Substantial evidence is less than a preponderance but more than a scintilla; it refers to relevant evidence that a reasonable mind might accept as adequate to support a conclusion." *Gentry v. Comm'r of Soc. Sec.*, 741 F.3d 708, 722 (6th Cir. 2014) (citing *Rogers v. Comm'r of Soc. Sec.*, 486 F.3d 234, 241 (6th Cir. 2007)).

A reviewing court is not permitted to resolve conflicts in evidence or to decide questions of credibility. *DeLong v. Comm'r of Soc. Sec. Admin.*, 748 F.3d 723, 726 (6th Cir. 2014); *Bass v. McMahon*, 499 F.3d 506, 509 (6th Cir. 2007). Nor need the reviewing court necessarily agree with the Commissioner's determination in order to affirm it. "Even if [the] Court might have reached a contrary conclusion of fact, the Commissioner's decision must be affirmed so long as it is supported by substantial evidence." *Kyle*, 609 F.3d at 854—55. This is true even if substantial evidence also supports the claimant's position. See *McClanahan v. Comm'r of Soc. Sec.*, 474 F.3d 830, 833 (6th Cir. 2006).

Even when there is substantial evidence, however, "'a decision of the Commissioner will not be upheld where the [Social Security Administration] fails to follow its own regulations and where that error prejudices a claimant on the merits or deprives the claimant of a substantial right.'" *Rabbers v. Comm'r of Soc. Sec. Admin.*, 582 F.3d 647, 651 (6th Cir. 2009) (quoting *Bowen v. Comm'r of Soc. Sec.*, 478 F.3d 742, 746 (6th Cir. 2007)). Likewise, a court "cannot uphold an ALJ's decision, even if there 'is enough evidence in the record to support the decision, [where] the reasons given by the trier of fact do not build an accurate and logical bridge

7

between the evidence and the result.'"  *Fleischer v. Astrue*, 774 F. Supp. 2d 875, 877 (N.D. Ohio 2011).

Since March 27, 2017, the Social Security Administration regulations have provided that the Commissioner will "not defer or give any specific evidentiary weight, including controlling weight, to any medical opinion(s) or prior administrative medical finding(s), including those from [] medical sources."  20 C.F.R. § 404.1520c(a).   Rather, the Commissioner will consider "how persuasive" the medical opinion is.  20 C.F.R. § 404.1520c(b).

The claimant bears the burden of proving that she is disabled within the meaning of the Social Security Act (20 C.F.R. 404.1512 and 416.912).   "Disability" is defined as the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment or combination of impairments that can be expected to result in death or that has lasted or can be expected to last for a continuous period of not less than 12 months."  (20 C.F.R. 404.1505(a)).

The Social Security Administration bears a limited burden of proof, known as the burden of going forward.  The Social Security Administration must support a finding that a claimant is able to perform other work with evidence of such work, i.e., with evidence showing that jobs exist in significant numbers in the national economy that an individual of the claimant's age, education, work experience, and RFC could perform.  (20 C.F.R.404.1512, 404.1560(c), 416.912, and 416.960(c)).

A claimant's RFC is her ability to perform physical and mental work activities on a regular and ongoing full-time basis, considering the combined and cumulative effects of all medically determinable impairments, as reasonably established by the evidence.  (SSR 96-8p). While the RFC must be based on all relevant evidence in the record, the Sixth Circuit does not

hold that the "medical opinions must be the building blocks of the [RFC] finding" but "must make a connection between the evidence relied on and the conclusion reached." *Epps v. Comm'r of Soc. Sec. Admin.*, No. 1:23-cv-1462, 2024 WL 3184466 at *9 (N.D. Ohio June 4, 2024) (quoting *Tucker v. Comm'r of Soc. Sec.*, 775 F.App'x 220, 226 (6th Cir. 2019)).

### Plaintiff's Objections to the Magistrate Judge's Report and Recommendation

Plaintiff generally objects to the Magistrate Judge determination that the ALJ could evaluate Plaintiff's RFC even if the state agency medical consultants lacked sufficient evidence to render a decision. (ECF #12, at 2).  First, Plaintiff objects to the Magistrate Judge's determination that the information available to the ALJ and unavailable to the state consultants (namely, Plaintiff's testimony and exhibit 6F), was significant enough for the ALJ to create an RFC when it was insufficient for the state agency consultants. *Id*.  Plaintiff supports this by arguing the state agency experts had access to "almost the entire medical record" available to the ALJ.  (ECF #12, at 3).  Further, Plaintiff alleges that the evidence the ALJ had and the state agency lacked could not have "drastically altered their findings." *Id.*

Plaintiff then argues that the ALJ failed to "connect the dots" between the evidence available and the decided RFC. (ECF #12, at 3).  She maintains that the ALJ failed to explain how the evidence available to her made up for the consultant's insufficient evidence.  *Id.*  In sum, Plaintiff argues that the additional evidence the ALJ had when making her evaluation was not significant enough to overcome the state consultant's lack of evidence and the ALJ failed to explain how the evidence impacted her RFC decision.

### Analysis

Only the ALJ holds responsibility to determine an RFC. 20 C.F.R. §§ 404.1546(c), 416.946(c).  An RFC is considered an "administrative finding," and requiring the ALJ to base

9

her RFC on a medical opinion inappropriately "confer[s] upon the treating source the authority to make the determination or decision about whether an individual is under a disability." *See Shepard v. Comm'r of Soc. Sec.*, 705 F.App'x 435, 442 (6th Cir. 2017) (quoting SSR 96-5p, 1996 WL 374183 at *1-2 (July 2, 1996); *Rudd v. Comm'r of Soc. Sec.*, 531 F.App'x 719, 728 (6th Cir. 2013)).

Plaintiff's argument relies on the *Deskin* rule. *Deskin v. Comm'r of Soc. Sec.*, 605 F.Supp.2d 908, 912 (N.D. Ohio 2008). Plaintiff does not explicitly object to the Magistrate Judge's decision rejecting *Deskin* as unpersuasive in the District Court or the Sixth Circuit. However, Plaintiff's objection is premised on the *Deskin* rule, that the ALJ must have a medical opinion to establish the RFC. Therefore, this Court will address *Deskin*'s persuasive authority.

Plaintiff argues that the ALJ erred in not relying on a state consultant's medical opinion when deciding Plaintiff's RFC. Instead of pursuing further evidence of Plaintiff's daily activities, which the state agency consultants considered necessary to decide Plaintiff's RFC, the ALJ made a ruling based on the existing record. In support of her argument, Plaintiff referenced the standard employed in *Deskin*:

> ... [when] the transcript contains only diagnostic evidence and no opinion from a medical source about functional limitations (or only an outdated non-examining agency opinion), to fulfill the responsibility to develop a complete record, the ALJ must recontact the treating source, order a consultative examination, or have a medical expert testify at the hearing. This responsibility can be satisfied without such opinion only in a limited number of cases [in which] the medical evidence shows relatively little physical impairment and an ALJ can render a commonsense judgment about functional capacity.

*Report and Recommendation*, (ECF # 11, at 11) (quoting *Deskin*, 605 F.Supp.2d at 912).

In addressing *Deskin*, we must reckon with its history in the Sixth Circuit. As the Magistrate Judge notes, the Court can reject Plaintiff's argument to the extent it is based on the

rule in *Deskin* because it has since been explicitly rejected by this Court and logically rejected by Sixth Circuit precedent.

*Deskin* is not binding authority in the Northern District of Ohio and the Court has explicitly rejected it on multiple occasions. *Skibski v. Comm'r of Soc. Sec.*, No. 3:23-CV-01554, 2024 WL 3387290, at *13 (N.D. Ohio July 9, 2024); *see, e.g.*, *Carr v. Comm'r of Soc. Sec.*, No. 5:23-cv-00187, 2024 WL 1343473, at *5 (N.D. Ohio March 30, 2024) ("District courts in this circuit have declined to follow *Deskin* and *Kizys*."); *Winans v. Comm'r of Soc. Sec.*, No. 5:22-cv-01793, 2023 WL 7622634, at *4 (N.D. Ohio Nov. 15, 2023) ("By requiring an ALJ to secure a medical opinion whenever the record does not contain such an opinion, subject to only limited exceptions, *Deskin* places a higher burden on the ALJ than the Sixth Circuit does.").

A year after a ruling in the same district found the *Deskin* rule "not representative of the law," *Henderson v. Comm'r of Soc. Sec.*, No. 1:08-cv-2080, 2010 WL 750222, at *2 (N.D. Ohio Mar. 2, 2010), the *Deskin* court clarified in *Kizys* that the rule applied in only two circumstances: "(1) where an ALJ made an RFC determination based on *no* medical source opinion; or (2) where an ALJ made an RFC determination based on an outdated source opinion that did not include consideration of a critical body of objective medical evidence." *Raber v. Comm'r of Soc. Sec.*, No. 4:12-cv-97, 2013 WL 1284312 at *17 (N.D. Ohio Mar. 27, 2023) (quoting *Kizys v. Comm'r of Soc. Sec.*, No. 3:10-cv-25, 2011 WL 5024866, at *2 (N.D. Ohio Oct. 21, 2011)).

Further, current Sixth Circuit holdings on the necessity of a medical opinion for a ruling of RFC are contrary to the rule designated by *Deskin*. *Rudd*, 531 F.App'x at 727–28 (6th Cir. 2013) (holding that an ALJ was not bound by a medical opinion in determining the RFC). In *Mokbel-Aljahmi v. Comm'r of Soc. Sec.*, 732 F.App'x 395, 401 (6th Cir. 2018), the Sixth

11

Circuit held that an ALJ was not required to obtain another physician's opinion after giving no weight to an existing opinion regarding a plaintiff's RFC.  *Id.*  An ALJ must only order further examinations when "such an examination is *necessary* to enable the administrative law judge to make the disability decision."  *Landsaw v. Sec. of Health and Human Services*, 803 F.2d 211, 214 (6th Cir. 1986).  Additionally, an ALJ "does not improperly assume the role of a medical expert by assessing the medical and non-medical evidence before rendering a residual functional capacity finding."  *Poe v. Comm'r of Soc. Sec.*, 342 F.App'x 149, 157 (6th Cir. 2009).

Though *Deskin* is not controlling, "because it is now commonly referred to as the 'Deskin Rule'" and is applicable to Plaintiff's argument, it must be addressed.  *Falkosky v. Comm'r of Soc. Sec.*, No. 1:19-cv-2632, 2020 WL 5423967, at *6 (N.D. Ohio Sep. 10, 2020).  In this case, as there was no medical opinion evaluated, it falls within the first circumstance elucidated in *Kizys*.  *See Kizys*, 2011 WL 5024866 at *2; (*See* Tr. 19) ("With no functional assessment of the claimant's limitations, there are no opinions to evaluate for persuasiveness.")

1. **The ALJ did not err in her evaluation of the RFC because she used the evidence unavailable to the state consultants in her analysis and made a commonsense judgment based on the medical record.**

Plaintiff argues the ALJ's decision was not supported by sufficient evidence because the ALJ and the state agency consultants had almost the same medical records when making their evaluation, and the ALJ is "silen[t]" on the particular evidence that the agency experts did not possess.  ECF #12, at 3.  Plaintiff's objection is without merit.  First, the ALJ used the records and testimony the state agency consultants did not have in her analysis.  Second, the ALJ can make a commonsense judgment on all the available evidence, despite the state agency consultants stating there is insufficient evidence to determine an RFC.

12

Plaintiff concedes that the ALJ and the state agency consultants did not have identical evidence available for their evaluation: the ALJ had 6F — Plaintiff's treatment records from Healing Horizons Professional Counseling in 2022 — and Plaintiff's testimony. Contrary to Plaintiff's assertion that the ALJ is "silen[t]" on the additional evidence, the ALJ cites Exhibit 6F multiple times in her decision. She notes Plaintiff's symptoms (Tr. 20), presentation (Tr. 20), ability to "obtain independent housing" (Tr. 22), and failure to reveal "debilitating, ongoing psychological signs or significantly limiting mental function deficits" due to her record of a "cooperative attitude," "normal thought content" and "logical thought processes." (Tr. 22).

Further, the ALJ factored Plaintiff's testimony, which was taken after the state agency evaluation, into her decision. (Tr. 21–22). The ALJ evaluated the daily activities Plaintiff described in her testimony, alongside the lack of treatment she was receiving at the time of the testimony to decide the impact of daily activities on the RFC. (Tr. 21–22). She concluded that Plaintiff's lack of "significant overall deterioration," despite being untreated and on only a basic antidepressant, does not provide support for "the continuation of the severe symptoms that were understandably present in 2020." *Id.* Thus, the ALJ addressed Plaintiff's testimony, which was not available to state agency consultants, when assessing Plaintiff's RFC.

However, even if the Court disregards the importance of the testimony or Exhibit 6F to the ALJ's decision, this argument fails because the ALJ could make a commonsense judgment of the available evidence. As the Magistrate Judge noted, even if the *Deskin* rule applied, remand is still not appropriate. (ECF #11, at 11). Under the *Deskin* rule, this case does not require a medical opinion because the ALJ can apply a commonsense interpretation of the medical record. *See Bird v. Comm'r of Soc. Sec.*, No. 20-11919, 2021 WL 8014027, at *4 (E.D. Mich. Nov. 30, 2021). The *Deskin* rule holds that the responsibility for an ALJ to rely upon a medical opinion is

13

only omitted in "a limited number of cases [in which] the medical evidence shows relatively little physical impairment and an ALJ can render a commonsense judgment about functional capacity." *Deskin*, 605 F.Supp.2d at 912.

In *Epps v. Comm'r of Social Security Administration*, 2024 WL 3184466, at \*9 (N.D. Ohio, June 4, 2024), this Court remanded a case where the ALJ found an RFC based on the same evidence that state agency consultants considered insufficient to evaluate the RFC. *Id*. However, the case at hand differs in multiple capacities. First, in *Epps*, the impairment in dispute was deemed a "severe physical impairment" by the assigned ALJ, exempting it from the "commonsense judgment" exception in *Deskin*. *Id*. at \*9–10. Additionally, the ALJ in *Epps* had only diagnostic information, or "raw medical data" in the record. *See id.* at \*9. Therefore, the court in *Epps* held that the ALJ could not make a commonsense judgment under *Deskin* because the plaintiff had severe physical impairments and the evidence in the record was "raw medical data." *See id.* at \*9–10.

By contrast, in the present case, Plaintiff's conditions — bipolar I, PTSD, anxiety, and ADHD — are mental, not physical impairments. *See Bird,* 2021 WL 8014027, at \*4 (holding that anxiety, PTSD, and depression are not foreign to lay people and can be applied in a commonsense judgment). Further, the impairment symptoms are described in the record in "lay terms," not in purely diagnostic evidence. *See* (Tr. 22) (considering the record's descriptions of Plaintiff with "a cooperative attitude, normal perceptions, normal speech, normal thought content, average intelligence, logical thought processes and intact insight" in the evaluation of Plaintiff's RFC.); *see also Bird*, 2021 WL 8014027, at \*4 (finding evaluated treatment notes describing the plaintiff with an "anxious or depressed mood; normal affect; normal thought process and thought content; good memory and attention; and good judgement" as a description

14

in "lay terms" and not "raw medical data.").   As a result, unlike in *Epps*, this Court holds that the ALJ could make a commonsense judgment because there are no physical impairments and the medical records are in lay terms, not raw medical data.

Further, as the Magistrate Judge notes, one of the state agency consultants stated that obtaining the missing evidence of Plaintiff's daily activities would likely show that Plaintiff "would not be precluded from routine repetitive tasks" and "the evidence currently on file does strongly suggest that there has been improvement in her mental disorders."  (Tr. 99).   Therefore, though the state agency consultant did not make a judgment on Plaintiff's functionality, she did surmise that further evidence would not likely reduce Plaintiff's functionality.

Ultimately, if the Court applies the *Deskin* rule, the ALJ did not err in her evaluation of the evidence to decide Plaintiff's RFC because she used the additional evidence to make her determination and she made a commonsense judgment of the evidence.

2. **The ALJ sufficiently explained the bridge between the evidence available and the RFC decision.**

In the second part of her objection, Plaintiff argues that the ALJ did not make a sufficient explanation of the relationship between the RFC and the evidence provided.

An ALJ has sole responsibility for determining the RFC and is not required to "discuss each piece of data in [her] opinion, so long as [she] consider[s] the evidence as a whole and reach[es] a reasoned conclusion."  *Dieter v. Comm'r of Soc. Sec. Admin.*, No. 3:25-CV-00265, 2026 WL 145346, at *9–10 (N.D. Ohio, Jan. 20, 2026) (quoting *Boseley v. Comm'r of Soc. Sec. Admin.*, 397 F.App'x 195, 199 (6th Cir. 2010)).   However, the ALJ must consider all the evidence before her and meaningfully explain how the evidence supports the determined RFC. *Tammy W. v. Comm'r of Soc. Sec. Admin.*, No. 2:23-cv-1196, 2024 WL 4284251, at *3 (S.D. Ohio, Sep. 25, 2024).  If an ALJ reached an RFC determination after providing an overview of

15

the testimony, activities of daily living and treatment records, then the ALJ adequately explained her rationale for the RFC. *Hoffman-Shaw v. Comm'r of Soc. Sec.*, 2:18-cv-836, 2019 WL 1986521, at \*10 (S.D. Ohio May 6, 2019).

Further, an ALJ is not required to "recite the medical opinion of a physician verbatim in [her] residual functional capacity assessment." *Dieter*, 2026 WL 145346, at \*12 (quoting *Poe v. Comm'r of Soc. Sec.*, 342 F. App'x 149, 157 (6th Cir. 2009)). An ALJ is not "assuming the role of a medical expert" when she assesses "the medical and non-medical evidence before rendering a residual functional capacity finding." *Poe*, 324 F. App'x at 157. Ultimately, the claimant has the burden of proving the RFC. *See Walters v. Comm'r of Soc. Sec.*, 127 F.3d 525, 529 (6th Cir. 1997).

The ALJ addresses the gap in evidence of Plaintiff's activities in multiple ways. As stated before, the ALJ evaluated Plaintiff's testimony of her daily activities to explain that her symptoms were not severe. Further, the ALJ deemed the testimony to be only partially consistent with the activities Plaintiff claims in her medical record. Finally, the ALJ interpreted these activities and Plaintiff's mental examinations to make a judgment on Plaintiff's RFC.

In assessing Plaintiff's RFC, an ALJ is "only required to incorporate those limitations he deems credible." *Gant v. Comm'r of Soc. Sec.*, 372 F.App'x 582, 585 (6th Cir. 2010). Rejecting limitations does not mean an RFC is not supported by substantial evidence. *See Kleinhans v. Kijakazi*, No. 3:23-cv-00173, 2023 WL 7923901, at \*10 (N.D. Ohio Sep. 28, 2023).

If an ALJ chooses to discount a claimant's statements, they must provide a justification for doing so. *See Rogers v. Comm'r of Soc. Sec.*, 486 F.3d 234, 248 (6th Cir. 2007) ("[B]lanket assertions that the claimant is not believable will not pass muster, nor will explanations as to credibility which are not consistent with the entire record."). In the present case, the ALJ used

16

the medical record to evaluate the credibility of Plaintiff's testimony, calling it partially inconsistent with the medical records. Plaintiff testified she experiences "overwhelming emotional distress on a daily basis" and "last went to the store eight months prior to the hearing and felt angry and out of place and she reported interactions with the cashier were very difficult." (Tr. 21). However, the ALJ noted that the activities documented in the record are "not limited to the extent one would expect, given [the] allegations" in her testimony. (Tr. 22).

> While traumatic, the claimant was able to attend court dates in the prosecution of her daughter's killer (EX. 2F/2, 9, 16). She left her significant other and moved in with friends and while trying to work through her relationship, she was able to pursue social services programs to eventually obtain independent housing (EX. 2F/16, 23, 37, 44; EX. 3F/9, 24; EX 4F/42, 49; EX. 6F/10). She visited with some of her children and grandchildren regularly (EX. 3F/17; EX. 4F/7, 21, 28, 35, 42), attended a small church group every Wednesday (EX. 3F/17), went for motorcycle rides (EX. 4F/35) and even reported she was "so busy she ha[d] not focused on mood" (EX. 3F/24).

*Id.*

Activities can be considered in making a credibility determination of claimant's testified limitations. *See Sorrel v. Comm'r of Soc. Sec.*, 656 F.App'x 162, 174 (6th Cir. 2016) (stating it is "entirely appropriate" for an ALJ to consider daily activities "in determining whether her claims about pain and other limitations are credible."). Thus, it is proper for the ALJ to consider whether Plaintiff's testimony of her limitations aligned with the activities described in her medical report. *See Shepard v. Comm'r of Soc. Sec.*, 705 F.App'x 435, 441–442 (6th Cir. 2017) ("It was entirely appropriate for the ALJ to consider whether Shepard's asserted limitations were consistent with her ability to drive, prepare simple meals, shop, and go to eat or the movies.").

In short, the ALJ addressed Plaintiff's testimony against the record and concluded that Plaintiff had the ability to conduct daily activities despite claims of daily emotional distress. The

17

ALJ therefore considered the evidence as a whole and reached a reasonable conclusion.  *See*

*Dieter*, 2026 WL 145346, at *9–10.

Further, records of daily activities can be considered substantial evidence where there

is an absence of medical opinion as to functional limitations.  *See Cruse v. Comm'r of Soc. Sec.*,

502 F.3d 532, 544 (6th Cir. 2007) (holding that an ALJ can discount a medical opinion and

instead consider evidence in the record showing the ability to "do a variety of daily activities").

In the quote above, the ALJ underlines Plaintiff's ability to do many activities as demonstrated in

the record.  While Plaintiff testified that she experiences emotional stress daily and last went to

the store eight months ago, the ALJ is permitted to treat these statements as less than credible.

Therefore, the ALJ's assessment of Plaintiff's activities supports and explains the ALJ's

finding of Plaintiff's RFC.

The ALJ continues to describe the symptoms described in Plaintiff's examinations on the

record:

> The claimant is generally anxious and/or depressed with impaired attention and concentration, sometimes tearful and sometimes with mildly impaired judgment but she otherwise stabilizes and demonstrates a cooperative attitude, normal perceptions, normal speech, normal thought content, average intelligence, logical thought processes and intact insight.  The above residual functional capacity considers and incorporates these exam findings.

(Tr. 9).  After addressing Plaintiff's testimony, activities, and mental examination record,

the ALJ explains her findings as following:

> Because she experiences moderate limitation in [her] ability to maintain concentration, persistence, or pace, the undersigned limited her to simple instructions and tasks while maintaining concentration for up to 2-hour intervals with routine breaks. The claimant's moderate difficulty with social interaction is addressed with a limitation on the frequency of interaction with supervisors, coworkers, and the public. The claimant's moderate difficulty with adaptation or self-management is addressed with limitations on decision-making responsibilities and the frequency of change in the work place.

> *Id.*

18

On review, an ALJ's decision must be read "as a whole and with common sense." *Buckhanon ex rel. J.H. v. Astrue*, 368 F.App'x 674, 679 (7th Cir. 2010).   Although the ALJ does not list out how each piece of evidence contributed to each limitation in her opinion, it is clear the ALJ cited ample evidence, including Plaintiff's testimony, activities of daily living, treatment records and imposed corresponding limitations.  Thus, the ALJ did in fact consider the evidence and create a logical bridge between the evidence and the RFC.

Finally, Plaintiff does not point to any evidence in the record that indicates a limitation that would better fit Plaintiff's functionality and therefore, does not meet her burden to prove the RFC. *See* 20 C.F.R. § 404.1512.  This Court cannot search for evidence leading to a different limitation when the ALJ sufficiently explained her RFC determination with substantial evidence. *Tammy W.*, 2024 WL 4284251, at *6.

For these reasons, Plaintiff's objection is without merit.

In sum, though there was no medical opinion available as to Plaintiff's RFC, the ALJ did not have the responsibility to further develop the record because she could make a commonsense judgment on the existing record.   Further, the ALJ sufficiently evaluated all the evidence available and used it to support her conclusion on Plaintiff's RFC.  As a result, the Magistrate Judge recommends, and the Court agrees, that the ALJ properly decided Plaintiff's RFC.

Therefore, for the foregoing reasons, the Court ADOPTS the Magistrate Judge's Report and Recommendation and AFFIRMS the Commissioner's decision denying Plaintiff's application for disability insurance benefits.

**IT IS SO ORDERED.**

**DATE: 7/16/2026**                    <u>s/Christopher A. Boyko</u>
                                       **JUDGE CHRISTOPHER A. BOYKO**
                                       **UNITED STATES DISTRICT COURT**

19